**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**CITY OF MT. LEBANON, PENNSYLVANIA, Defendant.**

Civ. A. No. 86–438.

United States District Court, W.D. Pennsylvania.

Jan. 16, 1987.

Spencer Lewis, Jr., Reginald Sydnor, Michael Holmes, E.E.O.C., Philadelphia, Pa., for plaintiff.

John Myers, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

This is an age discrimination action brought by the Equal Employment Opportunity Commission (EEOC) against the City of Mt. Lebanon, Pennsylvania. In its amended complaint the EEOC alleges the termination of disability benefits to city employees at age 55 under Mt. Lebanon's former disability plan, set out in resolution R16–73, violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (¶ 6); and the termination of disability benefits to city employees at ages 62–68 under a schedule of duration of benefits under Mt. Lebanon's present disability plan, the "MEIT" plan, violates the ADEA (¶ 7). The EEOC seeks injunctive relief, back pay and liquidated damages. Mt. Lebanon answered alleging the action was time-barred and the disability plans were statutorily exempt bona fide employee benefit plans.

The EEOC now moves for summary judgment on liability contending the disability plans violate the ADEA, and Mt. Lebanon cannot establish the defense of the statute of limitations or the defense of a statutorily exempt bona fide employee benefit plan.

Because the cause of action grounded in the R16–73 disability plan is time-barred, summary judgment will be granted for Mt. Lebanon on paragraph 6. Because the MEIT disability plan is a statutorily exempt bona fide employee benefit plan, summary judgment will be granted for Mt. Lebanon on paragraph 7.

The disability plan set out in resolution R16–73 was in effect from January 1, 1973 through December 31, 1983. Under R16–73 a portion of the disability benefits, beginning in January, 1978, was insured under a policy purchased from an insurance carrier. Mt. Lebanon was responsible for the remaining portion of disability benefits not provided under the insurance policy. Under R16–73 disability payments terminated when an employee reached "normal retirement age." Beginning in 1978 the term "normal retirement age" in R16–73 was interpreted to refer to an employee's eligibility for a normal retirement pension. Under the pension plan an employee was eligible for a normal retirement pension at age 55 with 25 years of service.

The current disability insurance policy was purchased through the Municipal Employers Insurance Trust (MEIT) and was effective January 1, 1984. Under the MEIT plan disability benefits are paid under a schedule of duration of benefits. Under this schedule an employee disabled at age 62 is paid benefits for 3½ years. As the age at which an employee becomes disabled increases, the duration of benefits payments decreases, until at age 69 benefits are paid for one year. To date, no disability benefits have been paid under the MEIT plan.

### Statute of limitations

The EEOC contends this suit is timely. Specifically, the EEOC contends the cause of action grounded in the R16–73 disability plan is timely under the ADEA's three year statute of limitations for willful violations. Mt. Lebanon, on the other hand, contends the cause of action grounded in the R16–73 disability plan is barred under the ADEA's two year statute of limitations for non-willful violations.

The ADEA has a two year statute of limitations for non-willful violations and a three year statute of limitations for willful violations. 29 U.S.C. § 626(e)(1) (incorporating 29 U.S.C. § 255(a)). In this Circuit, an employer acts willfully under 29 U.S.C. § 255(a) if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited...." *Brock v.*

*Richland Shoe Co.*, 799 F.2d 80, 83 (3d Cir.1986). The more lenient standard for willful violations set out in *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.1972), that an employer acts willfully if it knew the ADEA was in the picture, has been expressly rejected in this Circuit. *Brock*, 799 F.2d at 82.

The EEOC asserts that the reckless disregard standard set out in *Brock v. Richland* should not govern the present case because the present case was commenced before *Brock* was decided.

There is no basis for refusing to apply *Brock* to the present case. The three requirements for non-retroactive application of a judicial decision set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) are not met here. First, *Brock* did not overrule clear past precedent, nor did it decide an issue of first impression whose resolution was not foreshadowed. The Third Circuit had not previously decided what constituted willfulness under 29 U.S.C. § 255(a). *Brock*, 799 F.2d at 82. The Supreme Court had adopted the reckless disregard standard for willfulness for liquidated damages under the ADEA and had rejected the *Jiffy June* "in the picture" standard. *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The district courts within the Third Circuit had split on the question of the appropriate standard of willfulness for the statute of limitations under the ADEA. *Compare Slenkamp v. Borough of Brentwood*, 603 F.Supp. 1298 (W.D.Pa.1985), and *Michaels v. Jones & Laughlin Steel Corp.*, 628 F.Supp. 48 (W.D.Pa.1985) (reckless disregard standard) with *EEOC v. Governor Mifflin School District*, 623 F.Supp. 734 (E.D.Pa.1985) ("in the picture" standard).

Second, *Brock*'s reckless disregard standard of willfulness is consistent with the plain meaning of the statute and a more lax standard would frustrate the legislative intent. *Brock*, 799 F.2d at 83.

Third, no inequity will result from retroactive application of *Brock*. *Brock* itself did not shorten any existing statute of limi-

tations. Although the EEOC asserts it withheld filing suit because it believed that a willful violation had occurred under the *Jiffy June* "in the picture" standard, the EEOC could not have reasonably relied on a standard of willfulness never adopted by the Third Circuit.

The EEOC next asserts that if it is required to prove reckless disregard under *Brock* to invoke the ADEA's three year statute of limitations, it has done so. As proof of Mt. Lebanon's knowing or reckless disregard for the matter of whether its termination of disability benefits at eligibility for normal retirement was prohibited by the ADEA, the EEOC points to the following facts: In 1979 the insurance carrier responsible for a portion of the R16–73 disability plan advised Mt. Lebanon of the effects of the 1978 amendments to the ADEA on long term disability plans; the insurance carrier then recommended changes to its portion of the plan; and Mt. Lebanon approved those changes.

Mt. Lebanon asserts there was no knowing or reckless disregard for whether its conduct violated the ADEA. In support of its position Mr. Lebanon points to the following facts: The individual who has been responsible for administering the disability plans for the last seven years was not aware of, and had not read, the 1979 memoranda from the insurance carrier. The first time a question arose concerning the termination of disability benefits under the R16–73 plan was in 1982. At that time Mt. Lebanon requested legal advice from its solicitor and was given an opinion that it could legally terminate benefits at eligibility for normal retirement. Relying on that opinion, Mt. Lebanon terminated the disability benefits in question, and has continued the practice.

On facts similar to those before this Court, the Court in *EEOC v. Westinghouse*, 646 F.Supp. 555 (D.N.J.1986), held that an employer had not acted willfuly under *Brock*'s reckless disregard standard. This Court finds there has been no willful violation of the ADEA.

Because there has been no willful violation of the ADEA, the two year statute of limitations for non-willful violations controls, and the cause of action grounded in the R16–73 plan must have been filed within two years of the last discriminatory act allegedly arising under that plan to be timely. This action was commenced February 26, 1986. The last discriminatory act allegedly arising under the R16–73 plan was the termination of disability benefit payments to James K. Gordon on June 22, 1983.[1] Because the cause of action grounded in the R16–73 plan was filed more than two years after the last discriminatory act allegedly arising under that plan, the cause of action grounded in the R16–73 plan is time-barred. Accordingly Mt. Lebanon is entitled to summary judgment on this cause of action.

The cause of action grounded in the MEIT plan is, however, timely. Because no employees have been adversely affected by the MEIT plan, the redress sought is injunctive relief on the EEOC's claim that the MEIT plan's schedule of duration of benefits violates the ADEA. It is to the cause of action grounded in the MEIT plan that the Court now turns.

*Bona fide employee benefit plan*

■ The EEOC contends Mt. Lebanon's disability plans do not come within the statutory exemption for bona fide employee benefit plans. Section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), exempts bona fide employee benefit plans from the prohibitions against age discrimination. This section provides that it shall not be unlawful for an employer:

to observe the terms of . . . any bona fide employee benefit plan such as retirement, pension, or insurance plan which is not a subterfuge to evade the purposes of this chapter except that . . . no such . . . employee benefit plan shall require or permit the involuntary retirement of any individual.

In order to qualify for the statutory exemption there must be 1) a bona fide employee benefit plan which exists and pays benefits, *see United Air Lines, Inc. v. McMann,* 434 U.S. 192, 194, 98 S.Ct. 444, 446, 54 L.Ed.2d 402 (1977); 2) the terms of the plan must be observed by the employer; and the plan cannot be a subterfuge to evade compliance with the ADEA. Further, even if the plan meets these three criteria, it cannot require involuntary retirement.

The EEOC agrees that the MEIT plan is a bona fide employee benefit plan in that it exists and pays benefits, and that the terms of the MEIT plan are observed by Mt. Lebanon, thus satisfying the first two criteria. However, the EEOC contends the MEIT plan is a subterfuge to evade compliance with the ADEA and that it forces involuntary retirement, thus precluding the MEIT plan from qualifying for the statutory exemption.

Specifically, the EEOC contends the MEIT plan is a subterfuge to evade compliance with the ADEA, as a matter of law, because the plan's schedule of duration of benefits is not sufficiently justified by cost data as set out in EEOC regulations. Under EEOC regulations if an employee is disabled after age 60, a plan may lawfully terminate benefits five years after the disability or at age 70, whichever occurs first. 29 C.F.R. § 869.120(f)(iii)(B). Other forms of reduction of benefits are justifiable only on the basis of age-related cost considerations. 29 C.F.R. § 860.120(f)(iii). A benefit plan will be considered in compliance with the statute where the actual amount of

---

1. The EEOC concedes an employee's cause of action accrues when benefits are terminated. In its briefs the EEOC refers to the "continuing violation" theory but only to save the cause of action for those employees whose benefits were terminated before Gordon's benefits were terminated. The EEOC does not argue that the alleged discrimination under the R16–73 plan continues to present. Cf. *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1175 (3d Cir. 1978). Had EEOC raised such an argument, the Court would find EEOC had alleged only the present effect of past discrimination, and not a present and ongoing violation of the ADEA sufficient to make the action timely. *See United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

payment made, or cost incurred, on behalf of an older worker is equal to that made or incurred on behalf of a younger worker. 29 C.F.R. § 860.120(a)(1). The cost data must be valid and reasonable. 29 C.F.R. § 860.120(d)(1). Actual cost data for the employees in question or for a larger group of similarly situated employees for a representative period of years meets this standard. *Id.*

Mt. Lebanon attempted to comply with these regulations by submitting general cost data. The EEOC's actuary found the general data "capable of an interpretation [ ] bringing it within the regulations", but stated that

> In order to definitively state the schedule is cost justified a nexus between the schedule and the general data must be shown.

EEOC proffers no other evidence in support of its argument that the MEIT plan is a subterfuge to evade compliance with the ADEA.

A subterfuge to evade compliance with the ADEA is a scheme, plan, strategem, or artifice of evasion, *United Air Lines v. McMann*, 434 U.S. at 203, 98 S.Ct. at 450. An employer can establish that a plan is not a subterfuge by proving an economic or business purpose or valid business reason for the challenged terms in the plan. *Crosland v. Charlotte Eye, Ear & Throat Hospital*, 686 F.2d 208, 212–213 (4th Cir.1982); *EEOC v. Home Ins. Co.*, 672 F.2d 252, 258–260 (2d Cir.1982).

■ EEOC cites no authority for its proposition that the failure of the employer to supply the cost justification required by its regulations establishes, as a matter of law, that a plan is a subterfuge. The regulations "seem to put a fairly heavy burden on the employer to justify any age-based distinctions in employee benefit plans on the basis of 'age-related cost justifications.'" *Cipriano v. Board of Education*, 785 F.2d 51, 58 (2d Cir.1986). One Court of Appeals has refused to endorse every detail of the regulations, *id.*, and held the employer can establish that the plan is not a subterfuge by showing a legitimate bu-

siness reason for structuring the plan as it did, *id.* Following *Cipriano*, this Court holds an employer can prove an employee benefit plan is not a subterfuge by proving an economic or business purpose or valid reason for the challenged terms even though every detail of the cost-justification regulations is not met.

To prove an economic or business purpose for the challenged terms in the MEIT plan, Mt. Lebanon proffers an affidavit from an actuarial consultant stating that the cost of insuring against disability increases with age, and that the schedule for the duration of benefits in the MEIT plan is a schedule which is applied by most disability insurers in the United States. In fact, it is the same schedule which the insurance carrier which provided coverage for a portion of disability benefits payable under the R16–73 plan had adopted in 1979, and which EEOC cites to as an indication that Mt. Lebanon should have modified the uninsured portion of the R16–73 plan, presumably in accordance with the insured portion, to comply with the ADEA. Moreover, the schedule for the duration of benefits in the MEIT plan is the same schedule set out in the interpretive rule, or statement of policy, concurred in by EEOC, accompanying the cost-justification regulations described above. 44 Fed.Reg. 30648, 30655 (May 25, 1979).

The interpretive rule provides that a long term disability plan which has a schedule of duration of benefits identical to the schedule in the MEIT plan is within the statutory exemption. The sole condition applied to this is that the underlying statistical data had not been independently verified and had to be reasonable. In this action the EEOC has not questioned the reasonableness of the underlying statistical data. To the contrary, the EEOC's actuary found the general data capable of an interpretation bringing it within the regulations. Rather the EEOC appears to be imposing an additional requirement, not set out in the interpretive rule, that there be a nexus between the general data and the plan.

Finally, the EEOC contends the MEIT plan forces involuntary retirement. The EEOC cites no factual basis in the record to support this argument. The EEOC cites no legal authority to the effect that a similar schedule of duration of benefits forces involuntary retirement.

The MEIT plan pays disability benefits according to a schedule of duration of benefits without regard to whether an employee is also eligible for retirement. To date, no disability benefits have been paid under the MEIT plan and there is no evidence that the termination of disability benefits under the schedule will force an eligible employee to apply for retirement. The experience under the former disability plan, the R16–73 plan, suggests that retirement does not necessarily follow the termination of disability benefits. Under the R16–73 plan, two of the seven employees identified by EEOC as having uninsured disability benefits terminated upon eligibility for retirement, Bert E. Ellenberger and James K. Gordon, did not apply for retirement.

Mt. Lebanon has established that the MEIT plan has a valid business purpose and is therefore not a subterfuge to evade compliance with the ADEA, even though every detail of the EEOC cost-justification regulations was not met. Mt. Lebanon has also established that the MEIT plan does not force involuntary retirement. There is no genuine issue of material fact remaining to be tried to the Court on EEOC's request for injunctive relief. Accordingly Mt. Lebanon is entitled to judgment as a matter of law on the cause of action grounded in the MEIT plan.

An appropriate order will be entered.